**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN EDWARD SAVAGE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-4612** |
| | : | |
| **CITY OF PHILADELPHIA, CORIZON** | : | |
| **HEALTH, C.O. SEARCY and JOHN** | : | |
| **DOE** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                        **July 1, 2022**

The incarcerated Kevin Edward Savage lived at the City of Philadelphia's Detention Center in November 2019. He became involved in an extended fight with another incarcerated person who injured him with a sharp object before a correctional officer eventually arrived to stop the fight.  The facility then transported Mr. Savage to Temple University Hospital after the fight where an orthopedic surgeon recommended prompt surgery including the insertion of rods and pins to repair his hand. He then returned to the facility. But the facility never arranged or scheduled his hand surgery despite knowing of the recommended surgery. Mr. Savage suffered disfigurement and continuing pain.

Our society entrusts the City's correctional officers to supervise and ensure the safety of all incarcerated persons. Mr. Savage now (in his third pro se attempt) identifies the correctional officer who allegedly failed to protect him in the extended fight with another incarcerated person. He further alleges a custom in the Philadelphia prison system regarding the failure to provide appropriate security, cameras, metal detectors, and similar mitigation measures in his facility to protect him. He alleges an unknown John Doe failed to schedule the appointment, and the City of

Philadelphia and its medical provider Corizon Health customarily do not authorize follow-up recommended medical care.

Mr. Savage's allegations as to the failure to protect him from the other incarcerated person and to authorize recommended follow-up medical care may now proceed past our section 1915 screening. We allow Mr. Savage's claims in his second amended Complaint to proceed against the City of Philadelphia and Corizon Health on municipal liability claims based on identified customs; against the identified correctional officer in her individual capacity alleging a failure to protect him during the fight; and a John Doe employee in his individual capacity who allegedly failed to schedule the hand surgery. We dismiss the remaining claims as Mr. Savage still has not pleaded the individual or official liability of the prison commissioner or of other officials named in his second amended Complaint, including a medical doctor. He also does not plead facts allowing him to proceed on a supervisory liability theory.

We grant Mr. Savage's request to place this matter on our Prisoner Civil Rights Panel for potential appointment of volunteer counsel to represent him.

## I.    Alleged pro se facts

Kevin Edward Savage fought another incarcerated man "Jay" in November 2019 at the Philadelphia Detention Center.[1] The dispute began over property Jay allegedly stole from Mr. Savage.[2] Jay left his housing unit and came into Mr. Savage's housing unit while Mr. Savage was elsewhere.[3] Mr. Savage returned, noticed property missing, and went to Jay's unit.[4] Mr. Savage and Jay began fighting.[5] Mr. Savage felt his hand shatter as he defended himself.[6] After "multiple minutes," Jay attempted to stab Mr. Savage with a knife.[7] Correctional Officer Searcy worked as the duty officer at the time of the fight, but she was not present in the area when the fight broke

out.[8] The fight lasted for approximately four minutes until Correctional Officer Searcy arrived, intervened, and sprayed Mr. Savage and Jay with mace.[9]

Lt. Simmons, the supervisor working at the time of the fight, arrived, handcuffed Mr. Savage, and took him to the Detention Center's medical facility.[10] Medical personnel from Corizon Health took x-rays confirming Mr. Savage fractured his hand.[11] Corizon Health personnel took Mr. Savage to Temple University Hospital the next morning.[12] A hospital orthopedic surgeon determined Mr. Savage needed emergency surgery on his hand within twenty-four to forty-eight hours.[13] Medical personnel at Temple University Hospital splinted and wrapped Mr. Savage's hand.[14] Detention Center personnel took Mr. Savage back to the Restricted Housing Unit at the Detention Center.[15]

At some point (we assume when Mr. Savage departed the hospital), medical personnel at Temple University Hospital notified Detention Center personnel Mr. Savage required emergency surgery on his hand.[16] Mr. Savage never returned to Temple University Hospital to receive his surgery.[17] The Detention Center (or possibly Corizon) employee "John Doe" responsible for scheduling Mr. Savage's surgery never did so.[18] Mr. Savage's hand is permanently disfigured, and he is in constant pain.[19]

Mr. Savage first sued Commissioner Blanche Carney, Deputy Warden Pierre Lacombe, and Corizon on October 19, 2021.[20] We dismissed claims against Commissioner Carney and Deputy Warden Lacombe in their official capacities.[21] We found Mr. Savage failed to allege their personal involvement in alleged Eighth Amendment violations required to hold them liable in their individual capacities. But we granted Mr. Savage leave to amend his complaint to plead claims against the City of Philadelphia for a violative policy or procedure, Commissioner Carney's and Deputy Warden Lacombe's personal involvement in the alleged civil rights violations, or against

others for alleged failure to protect him and denial of medical care, including against medical providers.[22]

Mr. Savage then filed a pro se amended Complaint (after an extension of time) against Commissioner Carney, Deputy Warden Lacombe, Corizon, and added Lt. Simmons, Correctional Officer Searcy, and Bruce Herdman as defendants.[23] We construed his pro se amended complaint as an attempt to state two Eighth Amendment claims: (1) failure to protect him in the Detention Center resulting in injury; and (2) a deprivation of recommended medical care. We screened his first amended Complaint as required by Congress under 28 U.S.C. § 1915A. We dismissed all official capacity claims against each individual Defendant because official capacity claims are treated as claims against the City of Philadelphia and he failed to sue the City; dismissed all municipal liability claims against Corizon for failing to allege a policy, practice, or custom causing his injury; dismissed the failure-to-protect and denial of medical care claims claim against Commissioner Carney, Deputy Warden Lacombe, Lt. Simmons, Correctional Officer Searcy, and Mr. Herdman in their individual capacities for failing to allege their personal involvement in the constitutional harm.[24] We allowed Mr. Savage to amend his complaint if he could do so in good faith to plead more detailed facts.

Mr. Savage then timely filed a second amended Complaint now before us followed by a letter purporting to strengthen his argument which we liberally construe as his second amended Complaint collectively seeking to pro se plead his claims.[25] Mr. Savage seeks to sue Lt. Simmons, Correctional Officer Searcy, Mr. Herdman, and the "Philadelphia Prison Systems," Commissioner Carney, and Deputy Warden Lacombe.[26] He does not name Corizon in his caption but repeatedly refers to it in his allegations. He again claims Eighth Amendment failure-to-protect and deprivation of medical care claims.

4

## II.    Analysis

Congress requires us to screen Mr. Savage's second amended Complaint under 28 U.S.C. § 1915A even where he paid the filing fee.[27] Section 1915A requires we "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[28] On review, we must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted."[29] We apply the same standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to determine whether a complaint fails to state a claim under section 1915A(b)(1).[30] We are "mindful of our 'obligation to liberally construe a pro se litigant's pleadings'… particularly where the pro se litigant is imprisoned."[31] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[32] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[33]

We construe Mr. Savage's second amended Complaint as asserting violations of his Eighth Amendment rights through 42 U.S.C. § 1983.[34] He alleges the individual Defendants, including an unidentified Detention Center or Corizon employee "John Doe," and the "Philadelphia Prison System" violated his Eighth Amendment rights by: (1) failing to protect him in the Detention Center resulting in injury; and (2) depriving him of recommended and necessary medical care. Mr. Savage seeks to hold each named state actor liable in their official and individual capacities.[35] Mr. Savage seeks unspecified injunctive relief, and compensatory and punitive damages on his claims against the Defendants in their official capacities.[36]

5

A.     **Mr. Savage plausibly states municipal liability claims under *Monell* against the City of Philadelphia and Corizon.**

Mr. Savage's second amended Complaint seeks to add the "Philadelphia Prison Systems" as a defendant.[37] We construe claims asserted against the "Philadelphia Prison Systems" as claims against the City of Philadelphia's Department of Prisons. He also sues Corizon. Corizon may be considered a state actor for purposes of liability under its contract with the City to provide medical services to prison inmates.[38] Mr. Savage may attempt to plead claims against the City and Corizon under a theory of liability recognized by the Supreme Court in *Monell v. Department of Social Services*.[39]

Under *Monell*, a municipality like the City of Philadelphia or Corizon, is not liable for the unconstitutional actions of its employees simply because of their employment.[40] But the City and Corizon may be liable if Mr. Savage shows its "policy or custom" violated his constitutional rights.[41] There are two ways Mr. Savage may seek to hold the City and Corizon on a municipal liability claim under section 1983: (1) an unconstitutional policy or custom of the City or Corizon led to his injuries; or (2) his injuries were caused by a failure, including a failure-to-train, or inadequacy by the City or Corizon "reflect[ing] a deliberate or conscious choice."[42] Mr. Savage attempts to pro se allege both an unconstitutional policy or custom and a failure-to-train.

1.     **Mr. Savage alleges a custom of failing to protect him from attack by other incarcerated persons against the City for a custom of not authorizing recommended follow-up medical treatment against the City and Corizon.**

We first address Mr. Savage's plead facts regarding a policy or custom which he hopes may state a claim for municipal liability. A "policy" is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."[43] If alleging a custom, Mr. Savage must plead a "given course of

conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent to virtually constitute law."[44] He must "identify a custom or policy, and specify what exactly that custom or policy was."[45] Mr. Savage must do more than allege a policy or custom exists; he "must also allege that the policy or custom was the 'proximate cause' of his injuries."[46]

Mr. Savage sufficiently pleads a custom of failing to protect him from violence from other prisoners. He alleges the Detention Center has no operating cameras in the housing units and no metal detectors in the main corridor of the Detention Center.[47] He alleges overworked officers and an understaffed Detention Center.[48] He alleges the amount of time it took Officer Searcy and the response team to respond to the fight, and Officer Searcy's lack of supervision in the area show a failure-to-protect him.[49] He alleges these customs caused his injuries because the lack of operating cameras and metal detectors allowed Jay to attack him.[50]

Mr. Savage also sufficiently pleads a custom of the City and Corizon failing to authorize recommended follow-up medical care. He alleges Corizon x-rayed his hand after the fight with Jay and arranged for examination by an orthopedic surgeon at Temple University Hospital. The orthopedic surgeon recommended surgical repair of Mr. Savage's hand.[51] Mr. Savage alleges after his examination at Temple University Hospital, Corizon or the City either never scheduled the necessary surgery or never reviewed the records based on a custom of failing to follow the surgeon's order he needed emergency surgery.[52]

We liberally construe this claim as pleading the City or Corizon have a custom of not authorizing recommended follow-up medical care. We will allow this claim to proceed subject to further examination.

**2.      Mr. Savage fails to plead a failure-to-train theory of liability.**

Mr. Savage also hopes to plead facts allowing us to proceed on his municipal liability theory based on a failure-to-train. Mr. Savage must allege the City's or Corizon's failure to train its employees amounted to "deliberate indifference to the rights of persons with whom the [employees] come into contact."[53] To plausibly plead deliberate indifference, Mr. Savage must allege: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[54]

Mr. Savage alleges:

- "The decision makers of the 'City of Phila'[sic] through their prison department, established, knew of, and acqui[esced] to policies, procedures, and customs that Defendants knew or should have known  would lead to violations of citizens' constitutional rights";[55]

- the "City of Philadelphia through it[s] prisons department acted with deliberate indifference to the consequences when establishing and enforcing inadequate policies, procedures, and customs";[56]

- the City of Philadelphia through its Department of Prisons "has a history of not training and supervising corrections officers";[57]

- the City of Philadelphia "through its corrections department did not properly train its prison corrections force to be in constant communication with the medical department and its supervisors to avoid this type of matter as laid out herein";[58]

- the "decision makers at the Detention Center, who made, enforced, or turned a blind eye, to the defective policies, procedures, and customs including but not limited to the head of the prison system, and the individual['s] direct supervisors on the night in question";[59]

- the City of Philadelphia "through its prison department, did not properly establish a policy regarding inmate housing";[60]

- Corizon's "policy or custom" or "failure to train or supervise" in never scheduling his surgery or medical personnel never reviewing his records "amounted to deliberate indifference toward me";[61] and

- the City of Philadelphia, "by failing to take action to stop or limit the policy and/or custom or practice by remaining 'Deliberately Indifferent' [sic] to the systemic shortfalls which

occurred in the accordance with and as a direct and proximate result of the policy…condoned, acquiesced in, participated in, and perpetrated the policy in violation of my rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and the Commonwealth of Pennsylvania."[62]

Mr. Savage fails to state a claim under the failure-to-train theory. He may plead deliberate indifference by the City's " history of not training and supervising corrections officers."[63] But he does not plead the other two elements. He alleges the City's "indifference to the consequences when establishing and enforcing inadequate policies, procedures, and customs" but fails to allege the City's policymakers knew its Correctional Officers would confront a particular situation.[64] He also alleges the City violated his Fourth, Eighth, and Fourteenth Amendment rights but does not allege how the alleged failure to train caused the alleged constitutional violations.[65]

Mr. Savage also repeatedly references Corizon in his pro se second amended Complaint. He makes no plausible allegation against Corizon relating to a failure-to-train, alleging only Corizon had the responsibility to "take [him] to the surgery" and it never scheduled the surgery or never reviewed his medical records. Mr. Savage must allege Corizon's failure to train or supervise its employees amounting to a deliberate indifference led to his injuries. He fails to do so. He alleges Corizon's failure to schedule or take him to the recommended emergency surgery qualifies as "failure to train or supervise amount[ing] to deliberate indifference toward me."[66] But he cites no policy or custom on which Corizon failed to train or supervise its employees. He also does not plead facts alleging the elements of deliberate indifference, instead simply alleging its presence as a result of an alleged failure to train.

Mr. Savage's conclusory allegations do not state a plausible claim for *Monell* liability under failure-to-train theory. We dismiss failure-to-train claims against the City and Corizon.

**B.      We dismiss the Eighth Amendment failure-to-protect claim against the individual state actors except Correctional Officer Searcy and dismiss all supervisory liability claims against all individual state actors.**

Mr. Savage may seek to hold the individual state actors liable based either on their personal involvement in the alleged constitutional deprivation or under a theory of supervisory liability. He fails to plead facts supporting either theory except as to an individual liability claim against Correctional Officer Searcy for her alleged personal involvement in failing to protect him during the extended fight with Jay in the facility.

**1.      Mr. Savage fails to allege a failure-to-protect claim against the state actors in their individual capacity except as to Correctional Officer Searcy.**

As we explained to Mr. Savage in our earlier memoranda, the individual Defendants "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[67] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[68] Allegations of personal involvement require "particular 'allegations of personal direction or of actual knowledge and acquiescence.'"[69]

Mr. Savage again fails to allege personal involvement of all individual state actors in the alleged failure-to-protect claim except as to Correctional Officer Searcy. Mr. Savage fails (after three pro se attempts) to allege personal involvement of Commissioner Carney and Deputy Warden Lacombe for failure-to-protect. He must allege personal direction or actual knowledge and acquiescence. He similarly fails to allege personal involvement of Mr. Herdman, Lt. Simmons, and John Doe to hold them individually liable on the failure-to-protect claims. We dismiss Commissioner Carney, Deputy Warden Lacombe, Mr. Herdman, Lt. Simmons, and John Doe from the failure-to-protect claims.

But Mr. Savage plausibly pleads the personal involvement of Correctional Officer Searcy for his failure-to-protect claim. He alleges incarceration under conditions posing a substantial risk of serious harm by alleging "inmates move throughout [the prison] with sharpened screws, fan screens, gate pieces, etc." and "inmates are being murdered while in Philadelphia's custody."[70] He alleges deliberate indifference by Correctional Officer Searcy to substantial risk of harm by failing to intervene four separate times during his fight with Jay: when Jay went into Mr. Savage's unit; when Mr. Savage crossed into Jay's unit and the confrontation began; when Jay grabbed his knife; and when Correctional Officer Searcy finally did intervene to spray mace and break up the fight.[71] And he alleges Correctional Officer Searcy's deliberate indifference caused the harm by alleging Correctional Officer Searcy "failed to protect me by not intervening quick enough…[t]here was a lot of commotion before the actual fight occurred" and "[t]he lack of supervision by Officer Searcy was the reason I was injured."[72]

We allow Mr. Savage's failure-to-protect claim against Correctional Officer Searcy to proceed.

> **2.    Mr. Savage fails to state a failure-to-protect claim against an individual state actor under a supervisory liability theory.**

Mr. Savage  also appears to plead the individual state actors are liable to him under a theory of supervisory liability. Although liability cannot be predicated on *respondeat superior*, supervisors may be liable "if they established and maintained a policy, practice or custom which directly caused the constitutional harm" and acted "with deliberate indifference to the consequences."[73] Mr. Savage must: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the

risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[74]

Mr. Savage fails to meet this pleading standard as to Commissioner Carney, Deputy Warden Lacombe, or Lt. Simmons. He concededly named Lt. Simmons only because "he was the supervisory working the night of the incident."[75] He named Commissioner Carney and Deputy Warden Lacombe as being "responsible" in their positions for prison safety. But he must do more. He does not plead facts allowing us to find he plead the elements of supervisory liability. We dismiss his supervisory liability claims against all individual state actors.

### C.    We dismiss the Eighth Amendment denial of medical care claim against the state actors in their individual capacities except as against John Doe and dismiss all supervisory liability claims against all individual state actors.

Mr. Savage fails to allege personal involvement of all individual state actors in the alleged denial of medical care claim except the Detention Center's John Doe.

There are no allegations of personal involvement by Commissioner Carney, Correctional Officer Searcy, Lt. Simmons, or Mr. Herdman relating to the failure to schedule his hand surgery. Mr. Savage alleges Deputy Warden Lacombe failed to "get [him] medical treatment" after the fight but does not allege personal direction or actual knowledge and acquiescence of Deputy Warden Lacombe in the denial of medical treatment.[76] We dismiss the denial of medical care claims against Commissioner Carney, Deputy Warden Lacombe, Correctional Officer Searcy, Lt. Simmons, and Mr. Herdman in their individual capacities. For the reasons explained earlier in our review of the failure-to-protect theory, we also dismiss all supervisory liability theory claims against the individual state actors because Mr. Savage fails to plead facts suggesting he could meet the required elements of a supervisory liability  claim. Like Lt. Simmons, Mr. Savage named Mr.

Herdman "[s]ince he is the Chief of Medical Operations" for the prison system but fails to plead facts establishing the elements of a supervisory liability claim.[77]

But Mr. Savage plausibly pleads the personal involvement of a John Doe employee of either the City or Corizon in the failure to authorize the follow-up medical care for his hand. Mr. Savage alleges John Doe had actual knowledge and acquiesced in the denial of surgery: he alleges Temple University Hospital notified the Detention Center he required emergency hand surgery and at this point it became John Doe's responsibility to schedule and take him to the surgery.[78] John Doe did not schedule or take Mr. Savage to the surgery, resulting in Mr. Savage's hand being "permanently disfigured and in constant pain."[79]

Mr. Savage pleads a claim against John Doe in his individual capacity for failing to schedule or arrange to take him to his hand surgery.

D.    **We grant Mr. Savage's request to place his claims on our Prisoner Civil Rights Panel for possible selection by qualified counsel.**

Mr. Savage first moved for counsel on December 28, 2021.[80] We denied his motion for counsel until we screened his complaint under section 1915 and did so without prejudice to be renewed after the close of pleadings.[81] After Defendants Carney and Lacombe moved to dismiss, Mr. Savage again requested appointment of counsel.[82] Mr. Savage amended his complaint and again requested the appointment of counsel.[83] We dismissed Mr. Savage's amended complaint without prejudice after our screening under 28 U.S.C. § 1915A and declined Mr. Savage's request for appointment of counsel to be renewed if he could plead facts sufficient to state a claim(s).[84] Mr. Savage filed a second amended Complaint.[85] Consistent with our screening obligations, we find he now plausibly states limited Eighth Amendment claims against two individuals, the City, and Corizon. We revisit and now grant Mr. Savage's request for placement on the Court's Prisoner Civil Rights Panel should qualified counsel wish to represent him.

Although Congress in 28 U.S.C. § 1915(e)(1) permits us to appoint counsel in civil rights cases for indigent prisoners, our Court of Appeals emphasizes "volunteer lawyer time is extremely valuable," and "district courts should not request counsel . . . indiscriminately."[86] "Civil litigants have no constitutional or statutory right to appointed counsel."[87] Nevertheless, Congress has provided "[t]he court may request an attorney to represent any person unable to afford counsel," granting us "'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate."[88]

Under our Court of Appeals' guidance in *Tabron*, we undertake a two-step inquiry. First, we must consider the merits of the claim, deciding whether it has "arguable merit."[89] If so, we then consider a non-exhaustive list of factors, including (1) the plaintiff's ability to present his case; (2) the complexity of the legal issues; (3) the degree to which the factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) the plaintiff's ability to retain and afford counsel.[90] "This list of factors is not exhaustive, but instead should serve as a guidepost for the district courts."[91]

Applying the first step of *Tabron*'s two-step inquiry, we consider the merits of Mr. Savage's claims and today find his second amended Complaint has "arguable merit in fact and law." Mr. Savage plausibly alleges Eighth Amendment failure-to-protect and denial of recommended medical care claims. We move to the second step requiring us to consider a list of factors.

We find the factors weigh in favor of appointment of counsel. The first factor considers a plaintiff's ability to present his own case. Mr. Savage is a pro se indigent prisoner. His status significantly hampers his ability to present his case. The second factor considers the complexity

of the legal issues. The legal issues will largely turn on the facts developed in discovery. The third factor considers the degree to which the factual investigation will be necessary and the ability of Mr. Savage to pursue an investigation. The second and third factors weigh heavily in favor of appointment of counsel. We find the necessary discovery to develop the case will likely lead to factual investigation weighing in favor of appointment of counsel. We could see a need for expert testimony on both Eighth Amendment issues, meeting the fifth *Tabor* factor. The fourth factor considers the extent to which the case is likely to turn on credibility determinations. We find this factor to be neutral. The sixth factor considers Mr. Savage's ability to retain and afford counsel. We granted Mr. Savage's motion to proceed *in forma pauperis*.[92] This factor weighs in favor of appointment of counsel. We will refer the case to the Panel for counsel to consider serving as counsel.

## III.   Conclusion

We dismiss without prejudice Commissioner Carney, Deputy Warden Lacombe, Lt. Simmons, and Bruce Herdman on claims asserted against them in their official and individual capacities and under a supervisory liability theory. Mr. Savage may proceed on a failure-to-protect claim against Correctional Officer Searcy in her individual capacity only and may proceed on a failure to provide recommended follow-up medical care against John Doe in his individual capacity. Mr. Savage may proceed on his claim of municipal liability against the City of Philadelphia (through its Department of Prisons) for a custom regarding the duty to protect incarcerated persons and may proceed on his municipal liability claims against the City and Corizon for a custom of not following recommended follow-up medical care.

---

[1] ECF Doc. No. 25 at 2.

[2] ECF Doc. No. 29 at 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] ECF Doc. No. 25 at 2.

[7] ECF Doc. No. 29 at 1. Mr. Savage earlier described this weapon as a "sharpened screw" instead of a knife.

[8] ECF Doc. No. 25 at 2.

[9] ECF Doc. No. 29 at 1.

[10] ECF Doc. No. 25 at 2; ECF Doc. No. 29 at 4.

[11] ECF Doc. No. 25 at 2.

[12] ECF Doc. No. 29 at 4.

[13] ECF Doc. No. 25 at 3.

[14] *Id.*

[15] *Id.*

[16] ECF Doc. No. 29 at 3.

[17] ECF Doc. No. 28 at 4; ECF Doc. No. 29 at 3.

[18] ECF Doc. No. 29 at 3.

[19] *Id.*

[20] ECF Doc. No. 2.

[21] ECF Doc. Nos. 19, 20.

[22] *Id.*

[23] ECF Doc. No. 25.

[24] ECF Doc. Nos. 26, 27.

[25] ECF Doc. Nos. 28, 29.

[26] ECF Doc. No. 28 at 2.

[27] *Shane v. Fauver*, 213 F.3d 113, 116 n. 2 (3d Cir. 2000). Mr. Savage paid the filing fee on January 24, 2022.

[28] 28 U.S.C. § 1915A(a).

[29] 28 U.S.C. § 1915A(b)(1).

[30] *Turner v. District Att'y Phila. Cnty.*, No. 22-491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022) (citing *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

[31] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (italics omitted)).

[32] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) and citing *Higgs*, 655 F.3d at 339).

[33] *Yogt,* 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[34] Congress in section 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …" 42 U.S.C. § 1983.

[35] As explained in our earlier memoranda, claims asserted against individual Defendants Commissioner Carney, Deputy Warden Lacombe, Lt. Simmons, Correctional Officer Searcy, and Mr. Herdman in their official capacities are to be treated as claims against the City of Philadelphia. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). We dismiss all claims against the individual Defendants in their official capacities.

[36] ECF Doc. No. 29 at 6.

[37] ECF Doc. No. 28 at 2.

[38] *Dixon v. City of Phila.*, No. 20-6515, 2021 WL 3722276, *5, n.2 (E.D. Pa. Aug. 23, 2021).

[39] 436 U.S. 658 (1978).

---

[40] *Monell*, 436 U.S. at 691.

[41] *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)).

[42] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

[43] *Estate of Roman*, 914 F.3d at 798 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[44] *Id*. at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[45] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)).

[46] *Estate of Roman,* 914 F. 3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

[47] ECF Doc. No. 29 at 1–2.

[48] *Id.*

[49] ECF Doc. No. 29 at 1.

[50] *Id.* at 1–2.

[51] ECF Doc. No. 29 at 4.

[52] *Id.* at 3.

[53] *Estate of Roman*, 914 F. 3d at 798 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[54] *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

[55] ECF Doc. No. 29 at 4–5, ¶ 1.

[56] ECF Doc. No. 29 at 5, ¶ 3.

[57] ECF Doc. No. 28 at 3.

[58] ECF Doc. No. 29 at 5, ¶ 4.

[59] *Id.* at 5, ¶ 2.

[60] ECF Doc. No. 29 at 5, ¶ 5.

[61] *Id.* at 3.

[62] *Id.* at 5, ¶ 6.

[63] ECF Doc. No. 28 at 3.

[64] *Id.* at 5.

[65] *Id.* at 5-6.

[66] *Id.* at 3.

[67] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

[68] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[69] *Dooley*, 957 F.3d at 374 (quoting *Rode*, 845 F.2d at 1207).

[70] ECF Doc. No. 29 at 2.

[71] *Id.* at 1.

[72] ECF Doc. No. 28 at 4; ECF Doc. No. 29 at 1.

[73] *Ogrod v. City of Phila.*, --- F. Supp. 3d ---, No. 21-2499, 2022 WL 1093128, at * 13 (E.D. Pa. Apr. 12, 2022) (quoting *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016)).

[74] *Dennis v. City of Phila.,* --- F. Supp. 3d ---, No. 18-2689, 2022 WL 1590858, at *3 (E.D. Pa. May 20, 2022) (quoting *Min v. Morris*, 737 F. Supp. 2d 332, 339 (E.D. Pa. 2010)).

[75] ECF Doc. No. 29 at 4.

[76] ECF Doc. No. 28 at 4, ¶ 5.

[77] ECF Doc. No. 29 at 4.

[78] *Id.* at 3.

[79] *Id.*

[80] ECF Doc. No. 11.

[81] ECF Doc. No. 12.

[82] ECF Doc. No. 18.

[83] ECF Doc. No. 25.

[84] ECF Doc. No. 27.

[85] ECF Doc. Nos. 28, 29.

[86] *Tabron v. Grace,* 6 F.3d 147, 157 (3d Cir. 1993).

[87] *Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019) (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002)).

[88] *Montgomery*, 294 F.3d at 498 (quoting *Tabron*, 6 F.3d at 153).

[89] *Houser*, 927 F.2d at 697 (citing *Tabron*, 6 F.3d at 155).

[90] *Id.* (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Tabron*, 6 F.3d at 155-56).

[91] *Parham*, 126 F.3d at 457.

[92] ECF Doc. No. 5.